## Byrd et al. v. Begley.

(Decided Jan. 31, 1936.)

M. C. BEGLEY for appellants.

L. D. LEWIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

Bruce Begley, who is nineteen years of age, was a student in the Leslie County High School. The superintendent of the school is E. M. Byrd, and the county superintendent of schools is John D. Begley. In the fall of 1935, Superintendent Byrd suspended Bruce Begley from the school and told him that if permitted to return, it must be on the condition that he appear and make a public apology before all the students assembled. The suspension was approved by the county superintendent, and the county board of education declined to take any action in the matter.

Alleging that his expulsion was permanent and arbitrary, Bruce Begley, suing by his father and next friend, H. T. Begley, brought this suit against Superintendent Byrd and County Superintendent Begley to enjoin them from preventing him from attending the school. After hearing the evidence and being assured by Bruce Begley that if permitted to return to school he would obey all the rules and regulations established for the conduct of the school, the chancellor awarded a permanent injunction granting the relief prayed. The appeal challenges the propriety of the judgment.

At the outset we are met by the contention that the case is here without the evidence, and where that is the case, it will be presumed that the judgment is correct and it will be affirmed. We find, however, that the judgment, after granting the permanent injunction, contains the following:

"And to this ruling and judgment the defendant objects and excepts and prays an appeal to the court of appeals of Kentucky which is granted; and for the purpose of the appeal the defendant is granted permission to use this judgment and the facts set out in the judgment in lieu of a bill of exceptions."

Not only so, but the following stipulation bearing the signatures of M. C. Begley, attorney for appellants, and L. D. Lewis, attorney for appellee, is part of the record:

"It is agreed by the parties hereto that, for the purpose of this appeal, the facts set forth in the judgment appealed from, may be taken and

considered by this court as an agreed statement of facts herein.''

In view of the provision in the judgment and the stipulation, we conclude that the facts stated in the judgment are before us for review.

The material facts appearing in the judgment other than those above stated are in brief as follows: The Leslie county board of education maintains a dormitory for boys attending the high school, and Bruce Begley was a boarder at the dormitory. He had a room in the dormitory, but had been permitted at times to sleep on a sleeping porch. Superintendent Byrd had established the rule that each boy must be in his room at 7 o'clock p. m. One night he found Bruce Begley in the room of another boy after 7 p. m. and ordered him to go to his own room. Bruce was slow in obeying the order. The order was repeated, and after Bruce had gotten up and started, he announced that he would take his time. Bruce then went to the sleeping porch, where he had been permitted to sleep when he desired to do so. Superintendent Byrd came back after a while and asked Bruce what he meant by saying that he would take his time, and there is a disagreement as to what actually occurred. Bruce contends that after some controversy Superintendent Byrd attacked him, "and he pushed him away from him," while Superintendent Byrd says that he did not attack, but told Bruce that some day he would throw him out of the window if such conduct continued. Superintendent Byrd then sent Bruce out of the dormitory, and told him not to return to school. The next morning he saw Bruce and told him he might return after a four-day suspension if he would then tell him that he would obey the rules and regulations. Bruce attempted to return to school before the expiration of the four days, and Superintendent Byrd told him to leave the school grounds. The next day Bruce appeared with his father. Superintendent Byrd again sent him away and told the father that if Bruce were permitted to return to school, it must be upon the condition that he appear and make a public apology before all the students assembled. This Bruce refused to do. The matter was then brought before the county board of education and the board did not take any action about the matter except in an advisory way.

The state maintains a system of common schools

at great expense. The expense is justified on the ground that we are self-governing people, and an education prepares the boys and girls for the duties and obligations of citizenship. Neither the schools nor the state can carry on without rules or laws regulating the conduct of the student or citizen, and those who are taught obedience to the rules and regulations of the school will be less apt to violate the laws of the state. Appreciating the necessity therefor, the general assembly has provided that all pupils who may be admitted to the common schools shall comply with the regulations in pursuance of law for the government of such schools; that willful disobedience or defiance of the authority of the teachers, habitual profanity or vulgarity, or other gross violation of propriety or law shall constitute good cause for suspension or expulsion from school; that the superintendent, principal, or head teacher of any school may suspend a pupil for such misconduct provided that in case of suspension by the principal or head teacher such action shall be reported in writing immediately to the superintendent. Section 4363-9, Kentucky Statutes, Baldwin's 1934 Supplement. As the superintendent of the school has the power to make rules and to suspend for willful disobedience or defiance of his authority, the courts will not interfere unless it appear that he acted arbitrarily or maliciously. Board of Education v. Booth, 110 Ky. 807, 62 S. W. 872, 23 Ky. Law Rep. 288, 53 L. R. A. 787; Cross v. Board of Trustees of Walton Graded Common School, 129 Ky. 35, 110 S. W. 346, 33 Ky. Law Rep. 472. Here there was a rule that each boy in the dormitory should be in his own room at 7 o'clock p. m. The purpose of the rule was to require the students to devote their evenings to study instead of visiting, and there can be no doubt that the rule is reasonable. When Bruce Begley was told to go to his own room, he not only announced that he would take his time, but went to the sleeping porch instead of his room. Though he had been permitted at times to sleep on the sleeping porch, it was not then time to go to bed, and not only did his manner indicate a spirit of insubordination, but his going to the sleeping porch instead of the room was a clear case of willful disobedience and a defiance of the authority of Superintendent Byrd. Though the superintendent first told Bruce to leave and not return to school, he met him the next morning and he told him

he might return after a four-day suspension, if he would then tell the superintendent that he would obey the rules and regulations. Instead of complying with the order, Bruce returned before the expiration of the four days and was told to leave the school grounds. The next day he returned with his father and was again sent away with the admonition that he could return if he appeared and made a public apology before all the students assembled. In the circumstances, there was no permanent expulsion, but only a suspension that could be ended at any time upon the making of a public apology before the students. In our opinion the condition was in no sense unreasonable. Bruce, who was practically grown, had defied the authority of the superintendent and set a bad example for all the boys, and to permit him to return without an apology would necessarily encourage a spirit of insubordination and destroy the influence of the superintendent. It is at once apparent that a case of arbitrary or malicious action was not made out, but that the superintendent acted well within the discretion conferred by the statute. It follows that the injunction should not have been granted.

Wherefore, the judgment is reversed and the cause remanded with directions to dismiss the petition.